---

CUSTOMERS BANK,                    Civil No. 17-08367 (NLH)

          Appellant,        **OPINION**

    v.

ROMAN P. OSADCHUK,

          Appellee.

---

**APPEARANCES**:

REBECCA K. MCDOWELL
ROBERT I. SALDUTTI
SALDUTTI LAW GROUP
800 N KINGS HIGHWAY
SUITE 300
CHERRY HILL, NJ 08034

    *Attorneys for Appellant*

ROMAN P. OSADCHUK
4102 SEABOARD CIRCLE
NORTH WILDWOOD, NJ 08260

    *Pro Se Defendant/Appellee*

**HILLMAN**, District Judge

    This appeal arises from the Bankruptcy Court's order and judgment in favor of Appellee Roman P. Osadchuk ("Appellee" or "Osadchuk"), which rejected Appellant Customers Bank ("Appellant" or "Customers Bank") argument that its claim is not

dischargeable under 11 U.S.C. § 532(a).  For the reasons

expressed below, the decision of the Bankruptcy Court will be

affirmed, and the appeal will be dismissed.

<u>**BACKGROUND**</u>

Appellant, Customers Bank, is the successor in interest to

the underlying obligation at issue in this case, having acquired

InterSTATE Net Bank ("ISN") via an FDIC receivership.  The

underlying obligation originally held at ISN was a $2,000,000

loan entered into by Seawinds LLC ("Seawinds") on March 16,

2005.  Seawinds is an entity whose members include Appellee

Roman P. Osadchuk and his business partner Charles Stanfa.  The

loan was intended to finance the development of single family

homes on 37 lots in Wildwood, New Jersey and was to mature,

according to a mortgage note executed on that same day ("Note"),

on March 16, 2007.

The Note was secured by the 37 lots in Wildwood, New

Jersey, which were set to be developed under a contract with K.

Hovnanian, a real estate developer (the "K. Hovnanian

Contract").  For additional security, Osadchuk and Stanfa also

each executed personal guarantees.

The guaranty agreement ("Guaranty") executed by Osadchuk

required him to provide annually personal financial statements

and individual tax returns.  The Note matured in March 2007.  At

some point, the parties engaged in negotiations to extend the

life of the Note.  As part of that process, Osadchuk submitted to ISN a Statement of Financial Condition ("SFC").  This SFC was prepared by the accounting firm of Capaldi, Reynolds & Pelosi. A few months later, on October 28, 2007, Seawinds and ISN executed a Change in Terms Agreement to extend the maturity date of the Note for another eighteen months ("CIT Agreement").

The statements contained in the SFC and their effect on ISN are the subjects of this appeal.  Specifically at issue are two valuations disclosed in the SFC which contribute to Osadchuk's, and his wife Geraldine's, joint net worth of $6,715,978.00. First, the SFC valued Osadchuk's 50% interest in Seawinds at $1,825,000.  Second, the SFC states that Osadchuk's former residence — located at 131 Seaspray Court, North Wildwood, New Jersey (the "Seaspray Property") — was valued at $3,500,000.  It is undisputed that Osadchuk provided these valuations to his accountant to include in the SFC.

The Note eventually entered default.  On May 22, 2012, Customers Bank obtained a judgment against Osadchuk in the amount of $3,081,281.39.  Customers Bank was unable to collect on this judgment for three years and, on October 28, 2015, Osadchuk filed the underlying bankruptcy proceeding in the Bankruptcy Court.  On March 18, 2016, Customers Bank filed an Adversary Proceeding against Osadchuk to render the debt nondischargeable by reason of fraud under 11 U.S.C. §

523(a)(2)(B).

After almost eighteen months of motion practice, a bench trial was held before the Bankruptcy Court on August 10, 2017, September 28, 2017, and October 5, 2017. Customers Bank presented testimony from Kathleen Hansen, a representative of Customers Bank, Robert Reynolds, the accountant that prepared the SFC, two valuation experts, Mary Fox and Stephen Scherf, who both opined on the property values stated in the SFC, and Osadchuk. On October 5, 2017, Osadchuk moved for a directed verdict. Osadchuk did not present a case-in-chief.

After deliberation, the Bankruptcy Court made an oral ruling on the record granting Osadchuk's motion. The Bankruptcy Court found that Customers Bank had failed to meet its burden on three of the four required elements under 11 U.S.C. § 523(a)(2)(B) thus failing to prove the debt was not dischargeable. This ruling and the corresponding testimony are both discussed in more detail, _infra_. A timely appeal followed.

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over the appeal from the Bankruptcy Court's October 5, 2017 order pursuant to 28 U.S.C. § 158(a), which provides in relevant part: "The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees . . . of bankruptcy judges

4

entered in cases and proceedings referred to the bankruptcy
judges under section 157 of this title.  An appeal under this
subsection shall be taken only to the district court for the
judicial district in which the bankruptcy judge is serving."

**B.    Standard of Review**

In reviewing a determination of the bankruptcy court, the
district courts "review the bankruptcy court's legal
determinations <u>de novo</u>, its factual findings for clear error and
its exercise of discretion for abuse thereof." <u>Reconstituted</u>
<u>Comm. of Unsecured Creditors of the United Healthcare Sys., Inc.</u>
<u>v. State of N.J. Dep't of Labor</u> (<u>In re United Healthcare Sys.</u>),
396 F.3d 247, 249 (3d Cir. 2005) (quoting <u>Interface Grp.-Nev. v.</u>
<u>TWA</u> (<u>In re TWA</u>), 145 F.3d 124, 130-31 (3d Cir. 1998)).

**C.    Analysis**

The case centers on whether the $2,000,000 loan is
dischargeable in bankruptcy or not.  "The overriding purpose of
the Bankruptcy Code is to relieve debtors from the weight of
oppressive indebtedness and provide them with a fresh start.
Exceptions to discharge are strictly construed against creditors
and liberally construed in favor of debtors." <u>Insurance Co. of</u>
<u>N. Am. v. Cohn</u> (<u>In re Cohn</u>), 54 F.3d 1108, 1113 (3d Cir. 1995).
Thus, to render a debt not dischargeable a creditor must prove
its case by a preponderance of the evidence. <u>Grogan v. Garner</u>,
498 U.S. 279, 291 (1991)

Here, Customers Bank pursued a finding of nondischargeability under 11 U.S.C. § 523(a)(2)(B), which generally allows a finding of nondischargeability if credit was obtained fraudulently. Customers Bank was therefore required to prove, by a preponderance of the evidence, that a written statement — here the statements referenced above that were contained in the SFC: (i) was "materially false"; (ii) concerned "the debtor's . . . financial condition"; (iii) was "reasonably relied" upon by ISN; and (iv) was submitted by Osadchuk with the "intent to deceive" ISN. 11 U.S.C. § 523(a)(2)(B)(i)-(iv).

Neither party disputes that the SFC was a written statement that concerned the "debtor's . . . financial condition" and the Bankruptcy Court found in favor of Customers Bank on that element. At issue are the other three elements, which the Bankruptcy Court found Customers Bank had not proven by a preponderance of the evidence. This Court examines each element in turn.

### a. Osadchuk's "Materially False" Statements in his SFC

Customers Bank contends that the Bankruptcy Court erroneously found that it had not proven the existence of "materially false" statements in the SFC. As the statute suggests, and case law confirms, there are two sub-elements that must be proven here: (1) falsity of the statement and (2) materiality of the statement. Customers Bank relies upon the

testimony of its two experts, Fox and Scherf, to show both sub-
elements.

First, Customers Bank argues as to materiality. It asserts
that banks routinely rely on statements, such as the SFC, in
making lending decisions. It also asserts a Commercial Loan
Presentation prepared by ISN shows that ISN actually did rely
upon the SFC. Finally, Customers Bank asserts that a reasonable
person would rely upon the statements in the SFC when making the
lending decision at issue.

Second, Customers Bank argues that the statements as to the
valuation of property in the SFC were false. Fox opined that
the Seaspray Property was worth only $1.25 million at the time
of the SFC, not $3.5 million as stated. Scherf opined that
Osadchuk's Seawinds interest was worth between $1.37 and $1.59
million — before discounting — not the $1.825 million stated in
the SFC. According to Customers Bank, these expert valuations
prove Osadchuk's valuations as false.

Osadchuk counters by arguing based on the Bankruptcy
Court's findings. First, Osadchuk argues that Scherf only
opined on materiality in the accounting context, not the legal
context. Second, Osadchuk argues that Hansen could not and did
not testify as to ISN's standard practices with an SFC and
whether it actually relied on the SFC.

A statement is only materially false if it is "an important

and substantial untruth." In re Cohn, 54 F.3d at 1114 (quoting In re Bogstad, 779 F.2d 370, 375 (7th Cir. 1985)). To test materiality, courts have often examined "whether the lender would have made the loan had he known of the debtor's true financial condition." Id. (quoting In re Bogstad, 779 F.2d at 375). There is no requirement of actual reliance under this element; a material false statement also includes one that "is so substantial that a reasonable person would have relied upon it, even if the creditor did not in fact rely upon it in the case at hand." Id.

It is important to note that materiality is not solely a quantitative standard. Id. (noting that one way of testing materiality is whether the false statement "influences a creditor's decision to extend credit"). In other words, just because a figure is large does not automatically mean it is material. This is the distinction that the Bankruptcy Court was indicating when it stated that legal materiality is "not the same as materiality for accounting purposes" when discussing Scherf's testimony.

Materiality is a question of law and is reviewed de novo. In re Cohn, 54 F.3d at 1115. Reviewing the record as a whole, Customers Bank has given this Court no reason to disagree with the Bankruptcy Court's decision. The decision on materiality is not made in the abstract, but based upon the factual situation

presented.  It is important to remember that part of the factual

scenario here is that statements were considered by ISN in

determining whether to extend the maturity date by eighteen

months.  In this factual scenario, there is no reason to believe

that Osadchuk's allegedly false statements were either

substantial or important.

Customers Bank first asserts that the Commercial Loan

Presentation shows that ISN did actually rely upon Osadchuk's

allegedly false statements in the SFC.  No testimony was

presented proving by a preponderance of the evidence that this

was the case.  This is discussed in more detail in the next

section, <u>infra</u>.  This argument fails based on the record.

But, Customers Bank is correct, the case law does not

require proof of actual reliance for this element of 11 U.S.C. §

523(a)(2)(B).[1]  One way of proving reliance is to show that the

lender would not have made the same decision had it known the

truth about the borrower.  First, while Hansen did testify to

the normal course of conduct for <u>a</u> bank, she did not testify as

to whether, in this situation, a reasonable person would have

been influenced by Osadchuk's SFC.  Moreover, Osadchuk is

correct to point out that Hansen gave no testimony, whatsoever,

as to whether ISN would have been influenced by the allegedly

---

[1] As discussed <u>infra</u>, it is required for Customers Bank to prove
the element of "reasonable reliance."

false statements in Osadchuk's SFC.

Second, the Commercial Loan Presentation shows that ISN did not need to rely on Osadchuk's Seawinds interest or the Seaspray Property in order to be satisfied that the loan would be repaid. The Commercial Loan Presentation shows that ISN believed:

- The contract between K. Hovnanian and Seawinds requiring quarterly payments of $60,000 was to be committed to loan payments (A20); and

- Charles Stanfa's personal liquidity to be $1,051,470 (A18); and

- Roman Osadchuk's personal liquidity to be $111,508 (A18); and

- The contract between K. Hovnanian and Seawinds to be worth $6,200,000 (A20); and

- The Seawinds collateral to be worth $4,125,000 (A18).

With all these sources for potential repayment and with ISN believing "the chances of K. Hovnanian not remaining in the project [as] minimal," it is hard to see why the SFC statements complained of were very important to ISN at the time it extended the loan maturity date. There is no testimony showing otherwise.

Third, the Commercial Loan Presentation shows the ISN was interested in receiving loan payments for the next eighteen

months when considering whether it would extend the maturity date.  To extend the maturity date, naturally, ISN would have been interested in whether the current cash flows could have supported the loan until the proposed project was completed and it could receive back its principal.  The Commercial Loan Presentation discusses this, determining that the K. Hovnanian contract could support payment on the loans, and if that was discontinued Stanfa's "sizable financial investment portfolio would allow him to carry proposed debt service and personal needs for 2 years without support from K. Hovnanian."  (A25). Osadchuk's SFC is not even mentioned.  This theory of reasonable reliance has not been proved by a preponderance of the evidence based upon the record.

Finally, Customers Bank could prove reasonable reliance if it showed that the false statement was "so substantial" that any reasonable person would have relied upon it.  Customers Bank has also failed to present convincing evidence on this point.  Proof of this is also found in the Commercial Loan Presentation.

In that presentation, ISN stated it would rely first on the K. Hovnanian quarterly payments to service the loan, second on the "net discretionary income" of Osadchuk and Stanfa, and third on liquidation of the collateral.[2]  Customers Bank does not argue

---

[2] As discussed infra, the "collateral" mentioned is only the Seawinds property, not Osadchuk's Seawinds interest or the

that the first or second source of repayment was false. Just the liquidity of Osadchuk and Stanfa alone would have satisfied $1,162,978 of the loan. The collateral is also more than enough to satisfy the loan, even without exhausting Osadchuk's and Stanfa's liquid assets or Osadchuk's other real and personal property. The property owned by Seawinds was worth — according to ISN — $4,125,000 (after discounting by 75%). This could cover the loan two times over.

Customers Bank only argues that Osadchuk's home value[3] and interest in Seawinds was false. In light of all of the sources of repayment discussed above, which would more than cover the amount of the loan, these false statements are not "so substantial" that any reasonable person would have relied upon it.

The Bankruptcy Court did not make a ruling on whether the statements were false. This Court declines to make a determination in the absence of a ruling, as its finding on materiality moots the legal impact of any determination of the falsity of the statements for this element. Based solely on this holding, this Court may affirm the ruling of the Bankruptcy

---

Seaspray Property. (A25-26 (naming as collateral only the 37 lots located in Wildwood, which are Seawinds property)).
[3] In any event, there is no indication that it was reasonable for ISN to rely upon Osadchuk's house as a source of collateral because it was held jointly between he and his wife and the personal guarantee only obliged Osadchuk.

Court and dismiss this appeal.

### b. ISN's Reasonable Reliance on Osadchuk's Statements

Customers Bank argues that the Bankruptcy Court erroneously found no reasonable reliance in this case. Customers Bank makes two arguments. First, it argues that it did show actual reliance. It relies exclusively on the Commercial Loan Presentation, repeatedly arguing that the references to Osadchuk's SFC show that ISN actually relied upon it. Second, it argues that industry practice is to rely on a borrower's statement of financial condition. Osadchuk counters that Customers Bank did not show that ISN actually relied upon his SFC.

This element, that the creditor "reasonably relied" on the debtor's statement, requires both proof of reliance and that the reliance was reasonable. Reliance requires proof that "the creditor <u>actually rely</u> on the debtor's statement." <u>In re Cohn</u>, 54 F.3d at 1115 (emphasis in original). Whether reliance is reasonable is based on an examination of three factors: (1) ISN's "standard practices in evaluating credit-worthiness"; (2) industry "standards or customs . . . in evaluating credit-worthiness"; and (3) the "surrounding circumstances existing at the time" of Osadchuk's application for credit; in other words, whether there was any indication that the information in the SFC was inaccurate. <u>Id.</u> at 1117 (citing <u>Coston v. Bank of Malvern</u>

(In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc)).

Whether there was actual reliance is a question of fact.
Therefore, the Bankruptcy Court's finding on this sub-element
may only be reversed if it was clearly erroneous.  It was not.
Customers Bank's citation to Hansen's and Scherf's testimony is
not relevant, as neither had personal knowledge of whether ISN
actually relied upon Osadchuk's statement.  Courts have
routinely required an individual with personal knowledge of the
transaction to provide testimony.  See, e.g., JP Morgan Chase
Bank v. Tamis, No. 05-CV-737 (JLL), 2005 U.S. Dist. LEXIS 28120,
at *15-20 (D.N.J. Nov. 16, 2005) (affirming Bankruptcy Court
ruling that there was no actual reliance because no person
involved in loan transaction provided testimony on that point
for its motion for summary judgment).  Hansen and Scherf did not
have this personal knowledge.  For this reason alone, this Court
cannot find any clear error committed by the Bankruptcy Court.

The Commercial Loan Presentation does not change this
holding.  As the Bankruptcy Court points out, this presentation
contains "little to show . . . any reliance" by ISN on the
allegedly false statements in the SFC.  Customer Bank does show
that ISN likely read the Osadchuk SFC and it did cite it in the
Commercial Loan Presentation.  But, none of the citations that
Customers Bank points to — whether it was the principals'
experience, good liquidity, or good balance sheets — contains

14

explicit reference to the allegedly false statements that would allow this Court to find the Bankruptcy Court committed clear error. The circumstantial evidence in the Commercial Loan Presentation referenced in the previous section, supra, merely reinforces this holding.

Of special note here is the collateral summary. The only collateral listed in the table is Seawinds property. (A25). None of Osadchuk's assets are mentioned. In fact, when ISN discusses "PRIMARY/SECONDARY REPAYMENT" on the next page — concerning the Osadchuk guarantee — it notes that the "tertiary source of repayment would be the liquidation of the underlying collateral," referencing the Seawinds property. If ISN never viewed Osadchuk's residence or interest in Seawinds as a source of collateral, there is no reason why it would actually rely on the value Osadchuk placed on those assets. It did not have to, because it did not wish to liquidate the asset.

For those reasons, this Court finds that the Bankruptcy Court did not commit clear error on the issue of actual reliance. The Bankruptcy Court did not decide whether reliance was reasonable, as it found no reliance. This Court declines to examine this issue, as this Court's finding of no clear error on actual reliance moots Customers Bank's argument pertaining to the reasonableness of that reliance. Based solely on this holding, this Court may affirm the ruling of the Bankruptcy

Court and dismiss this appeal.

### c. Osadchuk's Intent to Deceive ISN

Customers Bank also argues that the Bankruptcy Court committed clear error when it decided that Osadchuk did not intend to deceive ISN. First, Customers Bank argues that the difference between the tax assessment value of Osadchuk's Seaspray property and the value he reported on his SFC is circumstantial evidence of intent (especially considering that "he was an experienced real estate broker with decades in the industry"). Accompanying this is the discrepancy between the expert valuation performed by Fox and Osadchuk's much higher valuation. Second, Customers Bank argues that the Bankruptcy Court erroneously found that Scherf discounted the Seawinds interest and this could account for the discrepancy. Third, Customers Bank argues that Osadchuk's testimony shows his intent to deceive, but the Bankruptcy Court erroneously refused to consider it.

Osadchuk only argues briefly on this element. Osadchuk asserts that the only circumstantial evidence of an intent to deceive was the difference in his valuation in the SFC versus Fox's valuation. He argues that Fox's valuation may have been affected by the fact that she never surveyed the interior of the home. He describes the difference in valuation as merely a difference in subjective opinion, not an intent to deceive.

Intent may be shown either by direct evidence or circumstantial evidence showing "reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement of the debtor when the totality of the circumstances supports such an inference."  In re Cohn, 54 F.3d at 1118-19.

The Court reviews the Bankruptcy Court's factual determinations for clear error.  In re United Healthcare Sys., 396 F.3d at 249.  Deference to the Bankruptcy Court is "particularly appropriate on the intent issue" since this determination "depends largely upon an assessment of the credibility and demeanor of the debtor."  JPMorgan Chase Bank, N.A. v. Pandolfelli, No. 09-18941, Adv. No. 09-2068, 2011 Bankr. LEXIS 2658, at *9 (Bankr. D.N.J. July 11, 2011) (quoting Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997)). Here, the Bankruptcy Court heard the relevant testimony and assessed credibility and subjective intent.  There is insufficient evidence in the record to overturn that determination.  With these standards in mind, this Court will address each of Customers Bank's arguments in turn.

First, this Court will address the difference in value between the tax assessment valuation and Osadchuk's personal valuation of the Seaspray property.  The tax appeal documents reference its value at $1,495,000 while Osadchuk values it at

17

$3,500,000.  This argument is not consonant with other arguments made by Customers Bank in its brief.  In a separate section, Customers Bank argues that this difference in valuation — which ISN was aware of at the time — should not have raised a red flag at ISN.  Scherf's testimony reveals that the tax assessment value is "book value" while Osadchuk's value is "fair market value."  The discrepancy in the price may merely reflect the difference between these two values, which would not suggest that Osadchuk intended to deceive ISN.  This argument does not show that the Bankruptcy Court's ruling was clearly erroneous.

In addition, Fox's testimony is similarly unavailing.  Fox testified that the value of the Seaspray property was only $1,250,000.  The Bankruptcy Court found her to be a credible witness, but also found — as supported by the testimony on the record — that (1) Fox never entered the house, (2) was unable to take the interior into account in her valuation determination, and (3) stated that her inability to do so could have affected her valuation.  Customers Bank argues that the Bankruptcy Court inserted itself as an expert in discounting Fox's testimony.

It did not.  Even though Fox's testimony was the only testimony on the record concerning the valuation of the Seaspray property, that does not mean that Customers Bank automatically meets its burden.  Fox did not go into the house, so the Bankruptcy Court was not clearly erroneous in discounting her

testimony.  In fact, it may have inserted itself as an expert if it did find subjective intent, as that would have required the Bankruptcy Court to speculate as to the Seaspray property's value.  There is no clear error here.

Second, this Court will address the discounting issue associated with Scherf's testimony.  Customers Bank's argument as to this issue depends upon an interpretation of the Bankruptcy Court's words that leaves them devoid of their original meaning.  The Bankruptcy Court ruled:

> I also don't know that Mr. Scherf's testimony
> regarding the value of Seawinds shows an intent to
> deceive because as he noted, a layperson might expect
> the best and not have taken any discount from the K.
> Hovnanian deal, and that's exactly what appears to
> have happened here.

The Bankruptcy Court did not misconstrue Scherf's testimony, but merely stated that it is more likely that Osadchuk had a more optimistic valuation.  As it appears that this was, in part, based on the Bankruptcy Court's credibility determination of Osadchuk, this Court must be deferential.  Without any other evidence presented on this point, it cannot find clear error.

Finally, this Court will address Osadchuk's testimony.  Customers Bank offers no record citations to show why it has an issue with the Bankruptcy Court's ruling on Osadchuk's testimony.  Regardless, it appears that the Bankruptcy Court made a determination that it would not consider Osadchuk's self-

serving testimony and would instead rely upon its impression of his credibility and Customers Bank's witnesses. Customers Bank does not point to the record to show why that was inappropriate, nor does it offer any argument to show clear error. In the absence of that, and considering the deferential standard, this Court will not overturn the ruling of the Bankruptcy Court.

### CONCLUSION

This Court, having reviewed the briefs of both parties and the record presented, finds no legal or factual reason to disturb the ruling of the Bankruptcy Court. The Bankruptcy Court will be affirmed and this appeal will be dismissed.

An appropriate Order will be entered.


Date:  September 24, 2018                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.